UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JUSTIN PATRICK URIBE,

        Plaintiff,

    v.

GREINER, City of Tillamook Police Officer;
BOMAR, Sergeant, City of Tillamook Police
Officer; WRIGHT, Chief, City of Tillamook
Police Officer,

        Defendants.

_____

Case No. 3:18-cv-01136-MC

OPINION AND ORDER

MCSHANE, District Judge:

      Plaintiff filed this action under 42 US.C. § 1983, alleging that defendants used excessive

force in violation of the Fourth Amendment when effectuating his arrest in December of 2017.

Defendants now move for summary judgment under Federal Rule of Civil Procedure 56, arguing

that plaintiff's claims are barred, and that defendants' actions did not violate his constitutional

rights. Because plaintiff fails to show that defendants' use of force was excessive under the

totality of the circumstances, defendants' motion for summary judgment is granted.

<u>BACKGROUND</u>

On December 6, 2017, City of Tillamook Police Officer Dennis Greiner was dispatched to the Fred Meyer store in Tillamook, Oregon, based on a reported disturbance between plaintiff and his girlfriend. Greiner Decl. ¶ 4 (ECF No. 51).

Prior to Officer Greiner's arrival, Fred Meyer employees observed plaintiff physically assaulting his girlfriend as he either led or dragged her through the store. Renault Decl. ¶¶ 3-5 (ECF No. 52).[1] A Fred Meyer Loss Prevention Officer, Nick Renault, was notified, and Renault confronted plaintiff and told him to release his girlfriend. Plaintiff complied and Renault ordered plaintiff to leave the store. *Id.* ¶ 6.

Plaintiff began walking backwards towards the exit; he then stopped and began walking towards Renault, who warned plaintiff to leave the store. *Id.* ¶ 7. As plaintiff walked backwards towards the exit, he reached behind his back and Renault ordered him to keep his hands out of his pockets. After plaintiff initially complied, he again reached behind his back. *Id.* Renault yelled, "This is your last warning, don't do it! Leave now!" *Id.* Plaintiff walked out of the store, and Renault called 9-1-1. Renault Decl. ¶ 7.

As he was talking with the 9-1-1 dispatcher, Renault went outside to locate plaintiff, who was getting into his vehicle. *Id.* ¶ 8. After a few seconds, plaintiff got out of his car and Renault told him that if he did not leave immediately, it would be a criminal trespass and the police "would be involved." *Id.* After hearing that the police would be arriving, plaintiff got back into his car and drove around the parking lot to the store entrance. *Id.* Officer Greiner arrived on the scene in his police vehicle and pulled in behind plaintiff. *Id.*

---

[1] Plaintiff allegedly used an "arm bar" to control his girlfriend as they walked through the store. Renault Decl. ¶ 3. "An arm bar is a joint lock technique that hyperextends the elbow joint and is used as pain compliance technique." *Id.* Plaintiff also struck his girlfriend several times and slammed her into a self-checkout station. ¶¶ 4-5.

When Officer Greiner arrived, he observed plaintiff near the store entrance, shouting at Renault. Greiner Decl. ¶ 5. Officer Greiner exited his vehicle and instructed plaintiff to show his hands and remove the keys from the ignition; plaintiff complied. *Id.* ¶ 6. Officer Greiner also asked plaintiff to exit the vehicle and place his hands on the roof, and plaintiff again complied. *Id*. City of Tillamook Police Sergeant Erica Bomar arrived at the scene around this time. Bomar Decl. ¶ 6 (ECF No. 50).

As plaintiff placed his hands on the vehicle, Officer Greiner moved forward to place plaintiff into handcuffs. Greiner Decl. ¶ 7. Plaintiff pulled away and struck the left side of Officer Greiner's face with his left elbow. *Id.* Officer Greiner and plaintiff struggled briefly, and Officer Greiner kicked plaintiff's legs from beneath him – sometimes called a "leg sweep" – and both plaintiff and Officer Greiner fell to the ground. *Id.* As Officer Greiner attempted to place plaintiff into handcuffs, plaintiff struggled with Officer Greiner and attempted to stand up and get into his car. Bomar Decl. ¶ 7.

Sgt. Bomar and Renault tried to assist Officer Greiner in handcuffing plaintiff, but plaintiff pulled his arms underneath his body to avoid the handcuffs. Greiner Decl. ¶ 9; Bomar Decl. ¶ 8. Eventually, Sgt. Bomar was able to handcuff plaintiff's right wrist, but she could not handcuff his left wrist, as plaintiff continued to resist. *Id.* After nearly two minutes of struggling, Renault and Officer Greiner placed their bodyweight on plaintiff in an attempt to gain control of him, but plaintiff still resisted. Greiner Decl. ¶ 10. Officer Greiner repeatedly told plaintiff to stop resisting or he would be "tased," and plaintiff ignored these commands and continued to struggle. *Id.* ¶ 8.

As the struggle continued, plaintiff "overpowered" the officers and sat up while Officer Greiner was on top of plaintiff's back. Bomar Decl. ¶ 10; Greiner Decl. ¶ 10. Plaintiff then went

to his hands and knees and shifted his weight, and Officer Greiner fell off of plaintiff's back. *Id.*

Officer Greiner lost his grip, and plaintiff stood up to get into his car. *Id.*

Sgt. Bomar yelled to Officer Greiner, "Where's your Taser?" just as plaintiff stood up.

Bomar Decl. ¶ 10. Officer Greiner drew his taser, shouted "taser" three times, and shot taser

probes into plaintiff's back for a five-second cycle. *Id.*; Greiner Decl. ¶ 12. Plaintiff fell to the

ground, and Sgt. Bomar and Renault placed plaintiff in handcuffs. *Id.*; Bomar Decl. ¶ 11.

Chief Wright arrived on the scene as plaintiff was lying on his stomach in handcuffs with

Taser probes visible on his back. Wright Decl. ¶ 5 (ECF No. 49). Chief Wright contacted

dispatch and requested an ambulance be sent for medical assistance, and plaintiff was transported

to the Tillamook Regional Medical Center Emergency Room for evaluation. *Id.*; Greiner Decl. ¶

13. Plaintiff was ultimately charged with assault of a police officer, assault, resisting arrest, and

disorderly conduct. Greiner Decl. ¶ 14.

On December 14, 2017, plaintiff was indicted on charges of Assaulting a Public Safety

Officer, Resisting Arrest, Disorderly Conduct in the Second Degree, Assault in the Fourth

Degree Constituting Domestic Violence, Attempted Assault in the Fourth Degree Constituting

Domestic Violence, and Harassment. Warren Decl. Ex. 1 (ECF No. 53).

On May 2, 2018, after trial by jury, plaintiff was convicted on all charges except for

attempted assault, which was merged with the assault charge, and he was sentenced to a term of

imprisonment. Warren Decl. ¶¶ 3-4 & Ex. 2.

On June 27, 2018, plaintiff filed this action and alleged numerous claims against various

law enforcement officers, the Tillamook District Attorney's Office, the public defenders'

consortium, the local Fred Meyer store, and a local newspaper. This Court dismissed plaintiff's

claims and allowed plaintiff to amend his complaint. Ultimately, plaintiff was allowed to proceed on his excessive force claims against Chief Wright, Officer Greiner, and Sgt. Bomar.

<u>DISCUSSION</u>

Plaintiff alleges that defendants violated his Fourth Amendment rights by using physical force and a taser when effectuating his arrest. Defendants move for summary judgment on grounds that plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and in the alternative, that the force used was reasonable and necessary under the circumstances. To prevail on their motion, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). I find that plaintiff cannot sustain his Fourth Amendment claims and do not address defendant's arguments under *Heck*.

As an initial matter, Chief Wright did not personally participate in the use of force, and he cannot be held liable for the actions of his subordinates. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that liability under § 1983 arises upon a showing of personal participation in the alleged constitutional violations). Plaintiff does not dispute that Chief Wright arrived on the scene only after plaintiff was handcuffed and was not involved in his arrest. Accordingly, Chief Wright is entitled to summary judgment.

With respect to Officer Wright and Sgt. Bomar, I find that their use of force against plaintiff was reasonable under the circumstances, based on the undisputed evidence reflecting that plaintiff was resisting arrest and attempting to evade officers.

Allegations of excessive force are analyzed under the Fourth Amendment's prohibition on unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir. 2001). "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). To determine the reasonableness of the force used, the court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Notably, the Ninth Circuit has held that tasers "when used in dart-mode constitute an intermediate, significant level of force that must be justified by the governmental interest involved." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

To evaluate the government's interest, a court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. A court may also consider whether the officer issued a warning before the force was used. *Bryan*, 630 F.3d 831. Ultimately, the issue is whether the totality of the circumstances justified the amount of force used. *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017). In this case, it did.

When Officer Greiner arrived at the scene, he knew plaintiff was involved in a physical disturbance and had observed plaintiff shouting at Renault. Greiner Decl. ¶¶ 4-5. When Officer Greiner attempted to effectuate his arrest, plaintiff assaulted Officer Greiner, struggled with two law enforcement officers and a private security officer, and attempted to escape. Further, Officer Greiner warned plaintiff that he would be tased if he did not comply. Plaintiff does not dispute

the evidence presented by defendants, other than to assert that they are "lying," and that he possesses additional, but unsubmitted, evidence of the altercation. Pl.'s Response at 2, 8 (ECF No. 58). Plaintiff's conclusory assertions do raise a genuine issue of fact to defeat summary judgment, and I accept defendants' evidence as undisputed. *See Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (stating that a nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"). Based on these undisputed facts, defendants' use of force was reasonable. *See Jones v. Las Vegas Metropolitan Police Dep't*, 873 F.3d 1123, 1127, 1130 (9th Cir. 2017) ("This decision was consistent with our case law, as we've held that use of tasers can be intermediate force. Using a taser to stop Jones and place him under arrest was reasonable under the circumstances.") (citation omitted).

At minimum, Officer Greiner and Sgt. Bomar are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be clearly established, a legal principle…must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority…Otherwise, the rule is not one that every reasonable official would know." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations and internal quotation marked omitted).

At the time of plaintiff's arrest, the Ninth Circuit had held that qualified immunity applied to an officer's use of "an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the

officer in his lawful performance of duties such that the officer has probable cause to arrest him."
*Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). Notably, the plaintiff in
*Shafer* was accused of only throwing water balloons and had not assaulted an officer. *Id.* at 1113-
14. Further, the Ninth Circuit had found that using a taser once was reasonable to "subdue" and
arrest a person who allegedly disobeyed an officer's orders and fled from a traffic stop, despite
the fact that the person had not threatened the officer or committed a serious offense. *Jones*, 873
F.3d at 1127, 1130.

Given the Ninth Circuit's 2017 decisions in *Shafer* and *Jones*, no "settled" caselaw would
have put Officer Greiner or Sgt. Bomar on notice that they would have violated plaintiff's clearly
established rights by using physical force and a single taser cycle after plaintiff assaulted his
girlfriend and a police officer, actively resisted arrest, and tried to escape.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 48) is GRANTED. This case is
DISMISSED. Any appeal of this decision or the Judgment dismissing this action would be
frivolous and not taken in good faith. Accordingly, plaintiff's IFP status is REVOKED.

IT IS SO ORDERED.

DATED this 25th day of October, 2019.

s/  Michael J. McShane
Michael J. McShane
United States District Judge